PAMELA HARRIS, Circuit Judge:
Airgas, Inc., a national company that produces gases for industrial and medical uses, operates a facility in Hyattsville, Maryland, where its approximately 65 employees are represented by an International Brotherhood of Teamsters union. When Airgas announced plans to relocate some of its Hyattsville operations to nonunionized facilities, the Union objected, arguing that the move was barred by the parties' collective bargaining agreement, and initiated the mandatory arbitration provided for by the agreement. And at the Union's urging, the district court entered a preliminary injunction prohibiting the contemplated transfer pending arbitration, to ensure that the status quo ante could be restored were the Union to prevail on the merits of the contract dispute.
Airgas appealed, asking that we vacate the injunction and allow it to proceed with its planned relocation during the arbitration. While Airgas's appeal was pending, however, the arbitrator issued a final decision in favor of the Union, the arbitration concluded, and the preliminary injunction expired by its own terms. Because Airgas no longer has a legally cognizable interest in the validity of the preliminary injunction, we follow our recent practice, see *233 International Union, UMWA v. CONSOL Energy, Inc. , No. 17-1378 (4th Cir. Nov. 27, 2017), ECF No. 42, and dismiss this appeal as moot.
I.
In February 2017, Airgas notified the Union that represents its Hyattsville, Maryland employees that it intended to "completely shut down" and move two of its Hyattsville operations to two nonunionized locations, one in Maryland and one in Pennsylvania, by the next month. J.A. 71. The vacated Hyattsville space would be converted into specialized storage facilities for nitrous oxide and various chemicals, as required to bring Airgas's practices into compliance with Food and Drug Administration and Department of Homeland Security regulations regarding chemical storage. The parties agree that the transfer would mean the loss of an estimated 13 Union positions at the Hyattsville facility, reducing the bargaining unit's size by about twenty percent.
The Union objected on the ground that the proposed relocation would violate Article 10 of the parties' collective bargaining agreement ("CBA"), which provides that Airgas "shall not subcontract, transfer, lease[,] assign[ ] or convey[ ] in whole or in part, directly or indirectly, any work or service ... presently performed or hereafter assigned to the collective bargaining unit." J.A. 29. Airgas disagreed, pointing to Article 9, which reserves to Airgas the right to manage its business as it sees fit "except as specifically limited" by the CBA, and in particular, to "[s]ell, lease, transfer, move, change location, discontinue, [and] relocate all or part of the business or operations." J.A. 26-28. Airgas also informed the Union that it had started the process of hiring nonunion employees to perform the transferred work operations at one of its new locations.
As the parties agree, their dispute is subject to mandatory arbitration under the CBA. When Airgas declined to expedite arbitration, the Union moved in the district court for a preliminary injunction barring the proposed relocation pending arbitration. Federal courts generally are without jurisdiction to issue injunctions in labor disputes, see 29 U.S.C. § 101, but the Union invoked the exception recognized in Boys Markets, Inc. v. Retail Clerks Union, Local 770 , 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) and Lever Brothers Co. v. International Chemical Workers Union, Local 217 , 554 F.2d 115 (4th Cir. 1976), which allows for injunctions during arbitration if an arbitrator otherwise would be unable to restore the status quo ante after deciding the merits of a labor dispute. According to the Union, this was precisely such a case: Once Airgas moved several large pieces of equipment from the Hyattsville facility to new locations, converted the vacated Hyattsville space into designated chemical storage, and replaced 13 terminated Union members with nonunion employees-five of whom, it turned out, already had been hired-it would be too late for an arbitrator to unwind the transfer if the Union prevailed on the merits. Airgas disagreed, insisting that it could and would undo the transfer promptly and with ease were the arbitrator to rule against it.
After holding a hearing, the district court agreed with the Union and issued a preliminary injunction barring the proposed transfer pending arbitration. See International Brotherhood of Teamsters, Local Union No. 639 v. Airgas, Inc. , 239 F.Supp.3d 906 (D. Md. 2017). The court recognized the "jurisdictional limitations deriving from the Norris-LaGuardia Act" that generally leave federal courts without jurisdiction to enter injunctions in labor disputes. Id. at 912. But under Boys Markets and settled circuit precedent, the court explained, "special considerations"
*234 will permit a preliminary injunction pending arbitration: When the parties' dispute is subject to mandatory arbitration under a collective bargaining agreement, a court retains jurisdiction to enter a preliminary injunction barring proposed employer conduct where "necessary to protect the arbitral process itself," by ensuring that the arbitrator will be able to "restore the status quo ante in an acceptable form were that conduct found to be violative of contract rights." Id. at 912-13 (quoting Columbia Local, American Postal Workers Union v. Bolger , 621 F.2d 615, 617-18 (4th Cir. 1980) ).
Because Airgas conceded that the parties' dispute was subject to arbitration under the CBA, the district court turned to the factual question of whether Airgas's planned relocation could, "as a practical matter, be fully unwound" were the arbitrator to rule against it. Id. at 913. The court noted that our circuit has upheld Boys Markets status quo injunctions in cases that involve the planned relocation of company operations rather than more easily rectified changes in work shifts or schedules. Id. at 913-14 (citing Bolger , 621 F.2d at 616-18 ; Drivers, Chauffeurs, Warehousemen & Helpers Teamsters Local Union No. 71 v. Akers Motor Lines, Inc. , 582 F.2d 1336, 1338-39, 1341 (4th Cir. 1978) ; Lever Bros. , 554 F.2d at 122 ). In this case, too, the district court determined, the evidence and testimony established that "it is not realistic to conclude that Airgas could simply undo" the contemplated move in the event of an unfavorable ruling by the arbitrator. Id. at 914. That was so, the district court found, because of a combination of circumstances: The move would require the physical relocation of large pieces of equipment from Hyattsville to the alternate sites; it would be accompanied by the repurposing of the Hyattsville space as designated chemical storage, as required by federal regulations; and Airgas already had started to replace Hyattsville workers with newly hired nonunion employees. Id. at 914-15. All told, Airgas's transfer of operations, if allowed to commence, almost certainly would become so "strongly rooted" during the year or so devoted to arbitration that it would be infeasible for an arbitrator to return the parties to the status quo ante . Id. at 915.
Having satisfied itself of jurisdiction to enter a preliminary injunction under Boys Markets , the district court went on to consider the traditional preliminary injunction factors. See Boys Markets , 398 U.S. at 254, 90 S.Ct. 1583 (instructing courts to consider whether issuance of injunction would be "warranted under ordinary principles of equity"). As to likelihood of success on the merits, the court explained, because the merits of the contract dispute are reserved to the arbitrator, the relevant inquiry is limited to whether the parties' dispute is subject to arbitration-a point conceded by Airgas. Airgas, Inc. , 239 F.Supp.3d at 916 (citing Akers , 582 F.2d at 1342 ). The other factors-irreparable harm, the balance of the equities, and the public interest-also supported issuance of an injunction, the district court found. Id. at 916-17.
The district court thus granted the Union's motion for a preliminary injunction, ordering Airgas to "maintain the status quo in this matter until issuance of a final and binding arbitration award." Id. at 917. Specifically, the court enjoined Airgas from relocating functions from its Hyattsville location to other facilities, "including relocating ... equipment or materials," and from making "reductions in or alterations to staffing" in the relevant Hyattsville operations. Id.
Airgas timely appealed, arguing principally that the district court lacked jurisdiction to enter an injunction, and also that *235 the district court abused its discretion under the traditional equitable factors governing preliminary injunctive relief. Airgas asked this court to reverse the district court and vacate the preliminary injunction, allowing it to effectuate its planned transfer of operations without waiting for arbitration to conclude.
On January 5, 2018, while Airgas's appeal was pending, the arbitrator ruled on the merits of the parties' contract dispute, finding for the Union. Airgas's proposed transfer of operations, the arbitrator held, would violate the plain language of Article 10 of the parties' CBA. The arbitrator thus permanently enjoined the planned relocation, ordering Airgas to cease and desist from the transfer of operations from its Hyattsville facility.
II.
Before we may address the propriety of the district court's preliminary injunction, we must consider whether the end of arbitration renders moot Airgas's appeal of a preliminary injunction that freezes the status quo while arbitration proceeds. "The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction, which extends only to actual cases or controversies." Porter v. Clarke , 852 F.3d 358, 363 (4th Cir. 2017) (internal quotation marks and alteration omitted). Because "the federal courts 'are without power to decide questions that cannot affect the rights of litigants in the case before them,' " the "parties' stake in the outcome of [a] case must exist not only at the case's inception, but for the entire duration of the proceedings." CVLR Performance Horses, Inc. v. Wynne , 792 F.3d 469, 474 (4th Cir. 2015) (quoting DeFunis v. Odegaard , 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) ). If an event occurs during the pendency of an appeal that makes it impossible for a court to grant effective relief to a prevailing party, then the appeal must be dismissed as moot. Williams v. Ozmint , 716 F.3d 801, 808-09 (4th Cir. 2013).
We very recently applied those principles to dismiss as moot an employer appeal from a Boys Markets preliminary injunction in a posture on all fours with the one we face today: A district court preliminarily enjoined a planned employer action pending arbitration; the employer appealed; and while the appeal was pending, the arbitrator ruled for the union on the merits of the underlying contract dispute. See International Union, UMWA v. CONSOL Energy, Inc. , No. 17-1378 (4th Cir. Nov. 27, 2017), ECF No. 42 (dismissing appeal as moot). We are not necessarily bound to follow that decision, which was issued without published opinion or explanation. Nor, however, should we depart from it without some good reason, if only to avoid any misimpression that we are picking and choosing which cases we would like to decide. Cf. Incumaa v. Ozmint , 507 F.3d 281, 286 (4th Cir. 2007) (cautioning that case or controversy requirement "may not be ignored for convenience's sake"). No such reason presents itself here.
It is clear enough that we no longer can grant Airgas the relief it originally sought: vacatur of the district court's preliminary injunction, allowing it to implement its planned relocation before the arbitrator's resolution of its contract dispute with the Union. That period of time has come and gone; it is not now possible for Airgas to execute its move during the pendency of arbitration. And the preliminary injunction to which Airgas objects has expired by its own terms. See Airgas, Inc. , 239 F.Supp.3d at 917 (ordering Airgas to "maintain the status quo in this matter until issuance of a final and binding arbitration award ") (emphasis added). The issue presented by Airgas is "no longer *236 'live,' " which means that we do not have a justiciable controversy in front of us. See Williams , 716 F.3d at 809 (quoting Powell v. McCormack , 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) ).
Airgas now argues, however, that even if it is too late for us to award the relief it originally sought, the possibility that it could obtain damages and attorney's fees were we to rule in its favor is enough to keep this case alive. In other words, if the district court lacked jurisdiction to enter the Boys Markets preliminary injunction, then, Airgas says, it would be entitled to damages for the period between that injunction and the arbitrator's award, during which it should have been-but was not-permitted to go ahead with its planned relocation. We cannot agree.
In most cases, an appeal from the grant of a preliminary injunction will become moot when a permanent injunction is entered, "because the former merges into the latter." See Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc. , 527 U.S. 308, 314-15, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999). Airgas is correct, however, that this is not always so. Sometimes a final adjudication turns on legal issues different than those posed by a preliminary injunction, so that the final decision does not establish the validity of the earlier injunction. As a result, mootness is avoided, because it remains possible that if the preliminary injunction was improper, the party against whom it operated would be entitled to damages for the period during which it was restrained. Id. at 315-18, 119 S.Ct. 1961. Airgas invokes that rule here: The final adjudication-the arbitrator's decision on the merits of the parties' contract dispute-has no bearing on whether the district court had jurisdiction to enter a Boys Markets preliminary injunction, and so the arbitrator's decision in favor of the Union does not establish that the Union was entitled to prevail at the preliminary injunction stage.
So far, so good. But there is a critical problem with Airgas's argument: What the arbitrator's final decision indisputably does establish is that regardless of the validity of the preliminary injunction, Airgas is not entitled to damages. As it turns out, there was no period of time during which Airgas should have been permitted to relocate its operations to nonunion facilities but was restrained from doing so, improperly or otherwise; according to the arbitrator, who has the final word, the CBA precluded such a move from day one. A party may recover damages for a preliminary injunction wrongfully entered if and only if the injunction prevented it from doing something that it had the legal right to do. See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc. , 910 F.2d 1049, 1054 (2d Cir. 1990) (damages available if improperly entered preliminary injunction stopped party from taking action it "had at all times the right to do"); see also Glob. NAPs, Inc. v. Verizon New Eng., Inc. , 489 F.3d 13, 22 (1st Cir. 2007) ; Slidell, Inc. v. Millennium Inorganic Chems., Inc. , 460 F.3d 1047, 1059 (8th Cir. 2006) ; Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc. , 16 F.3d 1032, 1036 (9th Cir. 1994). Here, as a result of the arbitrator's final decision, it is established that Airgas did not have the legal right to relocate its Hyattsville operations as planned, so there are no damages to recover.
This posture distinguishes our case from Grupo Mexicano , in which no finding had been made "either in the preliminary injunction order or in the final order" that the conduct enjoined was unlawful under the parties' agreement. 527 U.S. at 315 n.2, 119 S.Ct. 1961. It followed that were the Supreme Court to reverse the preliminary injunction, the defendant would have the *237 opportunity to establish that it had been enjoined from taking action it "had a right all along to do." See Glob. NAPs , 489 F.3d at 22-23. In this case, by contrast, the final adjudication under the CBA forecloses that position. So "even if the preliminary injunction was wrongly issued" by the district court, "its issuance [was] in any event [ ] harmless error," because the "final injunction establishes that the defendant should not have been engaging in the conduct that was enjoined ." Grupo Mexicano , 527 U.S. at 314-15, 119 S.Ct. 1961 (explaining that an appeal of a preliminary injunction is moot in such circumstances).
It makes no difference to this analysis that the district court, when it entered the preliminary injunction, ordered the Union to post a $5,000 bond "to compensate Airgas should it successfully establish that the preliminary injunction should not have issued, and that they wrongfully sustained damages as a result of this injunction." Airgas, Inc. , 239 F.Supp.3d at 917. As the terms of the bond make clear, Airgas has no automatic entitlement to damages of $5,000 on a finding that the district court lacked jurisdiction to enter a Boys Markets preliminary injunction; instead, Airgas can recover only if it also can establish damages, which, as we have just explained, it cannot. Cf. First-Citizens Bank & Tr. Co. v. Camp , 432 F.2d 481, 485 (4th Cir. 1970) (remanding to district court for "hearing as to damages sustained by [the enjoined party] by reason of the improvident issuance of the injunction order and for the award of such damages within the limits of the $5,000 bond"). And without the possibility of damages, it is well established that the remaining interests asserted by Airgas-attorney's fees and costs-are "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." See Lewis v. Cont'l Bank Corp. , 494 U.S. 472, 480, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (interest in recovering "sunk costs" and fee-shifting insufficient to create case or controversy).
Finally, we note that the exception to mootness doctrine for cases "capable of repetition, yet evading review," see Spencer v. Kemna , 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), does not apply. Indeed, Airgas has not invoked that exception, and for good reason. Our case law, and the law in circuits around the country, is replete with instances-many cited by Airgas and the Union in their briefs-in which appellate courts have been able to resolve appeals of Boys Markets injunctions before arbitration concludes. See, e.g. , Bolger , 621 F.2d at 618 (vacating improperly entered Boys Markets injunction before ruling by arbitrator); Akers , 582 F.2d at 1343 (affirming issuance of Boys Markets injunction before ruling by arbitrator). And in any event, as we have explained, even when an arbitrator does issue a decision before the appellate process is complete, the case will remain justiciable if the arbitrator decides in favor of the employer, establishing that it "had a right all along" to take the action enjoined and giving rise to a claim for damages. The "capable of repetition yet evading review" exception is a narrow one, reserved for "exceptional" circumstances. See Williams , 716 F.3d at 809-10 (quoting Los Angeles v. Lyons , 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ). Because Boys Markets appeals regularly may be resolved during the course of a still-live dispute, there is no occasion to invoke it here.*
*238 III.
For the foregoing reasons, the appeal is dismissed as moot.
DISMISSED

Provoked by what he views as a clear case of judicial overreach, our dissenting colleague is prepared to stretch the narrow "capable of repetition yet evading review" exception until it can accommodate this case. We see no need to strain for that result. Whatever the dissent's misgivings about Boys Markets and its progeny, those cases constitute settled precedent. And while labor disputes may be ideologically charged, nothing in the district court's carefully reasoned opinion suggests that it was anything but evenhanded in applying that precedent to the facts of this case.